Hon. Richard D. Lamm Governor of Colorado State Capitol Denver, Colorado 80203
Dear Governor Lamm:
You have requested an opinion from this office on the question of the distribution of Payment in Lieu of Taxes (PILT) monies received from the United States Government under 31 U.S.C. § 1601,et seq. The request from the Weld County commissioners outlines three specific questions, and I will address them in order.
QUESTIONS PRESENTED AND CONCLUSIONS
1. Does 31 U.S.C. § 1601 prohibit a county government from distributing PILT monies to county school districts?
My conclusion is "no."
2. Does state law prohibit the distribution of PILT monies to school districts when such monies are paid into the county general fund?
My conclusion is "yes."
3. This opinion does not address question number three concerning state appropriation to a school district receiving PILT monies, since this opinion renders that discussion unnecessary.
ANALYSIS
31 U.S.C. § 1601 states in pertinent part:
 the Secretary is authorized and directed to make payments on a fiscal year basis to each unit of local government in which entitlement lands . . . are located. Such payments may be used by such unit for any governmental purpose.
In this instance, the "unit of local government" contemplated by the definitional section 13 U.S.C. § 1601(c) would be the county in which the government entitlement lands are situated. While not specifically defined as such within the statute, the rules and regulations issued by the Department of Interior on September 23, 1977 defines unit of general government as:
 a unit of that type of government which, within its state, is the principal provider of government services affecting the use of entitlement lands . . .
 The term "unit of government" excludes single purpose or special purpose units of local government such as school districts or water districts. 43 C.F.R., 1881, 0-5(b)(1) and (2).
31 U.S.C. § 1603, Additional Payments to Counties:
 In the case of any land or interest therein, acquired by the United States (i) for the Redwood National Park pursuant to the Act of October 2, 1968 (82 Stat. 931) or (ii) acquired for addition to the National Park System or National Forest Wilderness Areas after December 31, 1970, which was subject to local real property taxes within the five years preceding such acquisition, the Secretary is authorized and directed to make payments to counties within the jurisdiction of which such lands or interests therein are located, in addition to payments under section 1601. The counties, under guidelines established by the Secretary, shall distribute the payments on a proportional basis to those units of local government and affected school districts which have incurred losses of real property taxes due to the acquisition of lands or interests herein for addition to either such system.
The specific provisions of section 1603 should not be interpreted to mandate that only section 1603 monies were intended to be distributed to school districts. Mr. Charles Hauser of the Bureau of Land Management, Department of Interior, has confirmed that the Bureau of Land Management interprets the language of section 1601 broadly; the monies are to be used, within the discretion of the local government unit, "for any governmental purpose." No additional guidelines as to the distribution of PILT funds have been issued.
It would appear that the creation and maintenance of public schools is a legitimate governmental purpose, funded from the property tax revenues of the county.
It is the opinion of this office that the federal
statutes do not prohibit the distribution of PILT monies from either section 1601 or section 1603 sources to school districts if the county so determines.
C.R.S. 1973, 30-25-106 authorizes the county commissioners to appropriate money from the county general fund:
 for all county expenses including the administrative expenses of elective and appointive offices, library, agricultural extension services, fire protection, fairs, advertising, airports, health, rodent control, water conservation, weed control, pest control, predatory animal control, and all other general county purposes authorized by law . . .
School purposes are neither specifically enumerated nor excluded by this section.
The county general fund, under C.R.S. 1973, 30-25-105, consists of "all county revenue except that specifically allocated by law for other purposes."
Federal monies received under the provisions of 31 U.S.C. § 1603 would not be affected by any restrictions on the distribution of the general fund as they are "specifically allocated" for school districts and other units of government under federal law. As pertains to these funds, the county acts only as the distribution agent, in much the same capacity as when the county treasurer funnels allocated property tax monies into the school district fund.
Funds received under section 1601, however, vest the county with discretion as to the distribution of PILT monies. PILT monies under section 1601 are not "specifically allocated by law for other purposes," and are therefore county revenues, subject to being placed within the general fund. Once within the general fund, such monies are restricted to "ordinary county expenses" under C.R.S. 1973, 30-25-106.
The financing of school districts within the county is not an ordinary expense of the county, but is accomplished in part by the collection of school district property tax revenues by the county treasurer. C.R.S. 1973, 22-40-101, et seq.
Although section 1601 funds are granted in lieu of tax revenues that might be raised by the school district fund, the provisions of C.R.S. 1973, 30-25-106 would prevent such a distribution once the monies are contained within the county general fund. Further, since funds acquired under 31 U.S.C. § 1601 would be considered county revenues, such monies must be placed within the general fund under C.R.S. 1973, 30-25-105, and could not be distributed directly to the school district fund.
My conversation with Mr. Hauser and a fiscal analyst with the Bureau of Land Management indicates that BLM interprets 31 U.S.C. § 1601 to vest the county with complete discretion in the distribution of funds received under that section. I have outlined to these gentlemen the proposition that Colorado law may prohibit the county from distributing section 1601 funds to school districts once such monies are placed within the general fund. I received the advice that state law was deemed to be controlling in such a situation, and that the result under Colorado law, would in their opinion, not contravene the intent of title 31.
This opinion does not address question number three concerning state appropriation to a school district receiving PILT monies, since this opinion renders that discussion unnecessary.
SUMMARY
In summary, it is the opinion of this office that while monies received under 31 U.S.C. § 1601 and 1603 could be granted to school districts under federal law, Colorado law, specifically C.R.S. 1973, 22-40-106, would prevent the county from distributing section 1601 monies to said school districts when such monies are contained in the county general fund. Monies obtained under section 1603, however, would be available to school districts, as specifically authorized by federal law.
Very truly yours,
 J.D. MacFARLANE Attorney General
cc: Weld County Commissioners
PUBLIC FUNDS COUNTIES SCHOOL DISTRICTS
31 U.S.C. § 1601 and 1603
C.R.S. 1973, 22-40-106
EXECUTIVE BRANCH Governor, Office of
While monies received under 31 U.S.C. § 1601 and 1603 could be granted to school districts under federal law, Colorado law (C.R.S. 1973, 22-40-106) would prevent the county from distributing section 1601 monies to school districts after said monies are paid into the county general fund. Section 1603 monies would be available to school districts, as authorized by federal law.